## TURNER *vs.* LEWIS and others.

In order that a lien may attach under the provisions of Chapter 122, R. S., of proceedings for the collection of demands against ships, boats, and vessels, for the breach of a contract of affreightment, the contract must arise in this State. The lien does not attach, where there is a breach of a contract, which although to be performed within this State, was made in another State.

Case reserved from Wayne County Court.

*Lothrop & Duffield,* for plaintiffs.

*J. M. Howard,* for defendants.

By the Court, WHIPPLE, J.

The question reserved for our opinion by the County Judge of Wayne County, is, whether upon the allegations contained in the declaration, a lien arises, which the plaintiff may enforce under the provisions of chapter 122 of the revised statutes of 1846. The agreement to transport the box and its contents, is averred to have been made at Chicago, in the State of Illinois, between the plaintiff and the mate of the steamboat Wisconsin. The box not having been delivered at Detroit, upon demand duly made, the plaintiff instituted proceedings to enforce a lien, which he insists, attached upon the non-fulfillment of the agreement.

Under the act of 1839, this Court held, that a new remedy was given to persons having claims against ships, boats, or vessels, navigating the waters of this State, but that a lien did not attach until the actual service of the attachment, issued pursuant to its provisions. In giving a construction to chapter 122 of the revision of 1846, this Court considered that a specific lien attached, for any of the causes of action specified in section 1 of that chapter; and that the proceedings authorized by that chapter had for their object the enforcement of such lien. This construction of that law forbade us from applying it to a contract for the delivery of supplies furnished a steamboat at Buffalo, in the State of New York, upon the principle that we were not at liberty to give to the law an extra-territorial operation. The counsel for the plaintiff, however, insists that the decision of this Court in the case of Bidwell *vs.* Whitaker *et al.,* (1 *Manning Mich. R.,* 469,) is inapplicable to that before us, for the reason that the contract of affreightment, although made in the State of Illinois, was to be performed in the State of Michigan; that as the City of Detroit was the place of delivery, and as delivery was refused, the breach of the contract occurred within this State, and thereupon a lien attached. I have felt every disposition to extend the provisions of our law in relation to liens, so as to embrace every

class of creditors, whether foreign or domestic, and to apply its provisions to contracts made within or without this State. When the case of Bidwell *vs.* Whitaker *et al.*, was under consideration, I endeavored to arrive at the conclusion that the law of 1846 was but a re-enactment of that of 1839. Such a construction would have been most consistent with a liberal and enlightened policy, and would have extended the benefits of its provisions to a large class of cases, and to a considerable portion of our citizens now excluded from its operation. But the statute of 1846 was too plain in its provisions to admit of any doubt, and hence this Court were called upon to give it a restricted and narrow construction.

After giving to the case before us a very careful examination, I have arrived at the conclusion that upon the facts disclosed in the pleadings no lien arises, and that the demurrer must be sustained. The principles decided by this Court in the case to which reference has been made, are applicable to the facts of this case. This conclusion is, I think, warranted by a fair interpretation of the statute, especially when construed with reference to some general rules of law to which I shall advert. Among the rules recognized for the interpretation of personal contracts, there is one of general application, viz: that the law of the place shall govern in respect to their validity and construction; and this primary rule is founded on the reasonable presumption that both parties had in view the law of the place where they were when the contract was entered into. This rule is, however, subject to some exceptions and qualifications; if, for instance, the contract is to be executed in any other country than that in which it is made, it is a fair *presumption* that they took into consideration the law of the place where it was to be carried into effect and performed. This exception to the rule, however, cannot be said to be founded so obviously upon the intention of the parties as the rule itself. Looking therefore, to what may have been the presumed intention of the parties, are we at liberty to infer, because the city of Detroit was the place of delivery, that a lien created by the statute of this State, was contemplated by the parties. Nothing appears from the terms of the contract, except the fact that the place of final performance was within this State, to authorize the presumption that a lien suggested itself to either party or was

ever intended to be created. It is difficult to imagine that parties entering into this contract of affreightment, contemplated in respect to its construction or effect, any law but that of Illinois, where the contract was made. It would certainly be a strained inference to say that because the place of delivery was in another State, the local laws of such State, providing for a lien in certain cases, would attach to a contract made in a foreign State. This could not well be contended for upon the principle that the laws of a State can generally only operate upon persons or property within its territorial jurisdiction. Keeping this principle in view, I am at a loss to determine how property in a foreign jurisdiction can be appropriated, or a lien attach, by virtue of a statute of this State. A contrary rule would be to claim that the laws of this State by an inherent authority, are entitled to respect extra-territorially; which would strike at the foundation of that independence and sovereignty claimed by every State. Courtesy, comity and convenience do sometimes sanction the operation of foreign laws upon contracts; especially among nations between whom commercial relations exist. I cannot therefore think that the contract in this case before us was entered into with an express view to the statute of this State creating a lien in certain cases, or that either party intended to be governed by it. Again: while it is a general though not universal rule of law, that where a lien is created by the *lex loci contractus,* it will be respected in all places where the property may be found, or where the right can be enforced by the *lex fori;* on the other hand, where the lien does not exist in the place of the contract it will not be allowed in another country, although the law of the place where suit is brought would otherwise sustain it. (*Story Con. Laws, sec.* 322.) If our statute is construed with reference to this general principle, the views I have expressed receive additional sanction. This rule, it may be fairly presumed, was known to the contracting parties, and excludes the idea that a lien was contemplated by either.

But it is said that the statute gives a lien "for all damages arising from the non-performance of any contract of affreightment," and that as the steamboat was within this State when the cause of action accrued, the lien attached, and the plaintiff is entitled to avail himself of the remedy pointed out by the statute to enforce it. This was cer-

45

tainly a new view of the statute, and is entitled to the merit of being ingenious. In the case of Bidwell *vs.* Whitaker, we held that the lien created by the statute was confined to contracts or injuries arising within this State. The claim in that case was for supplies furnished a boat in the State of New York, and the opinion of the Court must be understood to refer to that fact. This case, it is suggested, is distinguishable from that, in the particulars already stated, and demands the application of a more liberal rule of construction. After giving to the statute a careful examination, I am unable to accede to the correctness of the reasoning by which the construction contended for is attempted to be sustained. I think the fair interpretation of the statute requires that in order that a lien may attach for non-performance of a contract of affreightment, the contract must arise in this State. The lien attaches where the contract is made, and is created by virtue of the contract and not in consequence of its breach. Indeed this interpretation would seem to result from the principles I have discussed and attempted to sustain. If those principles are correctly stated, we are not at liberty to give to the statute such a meaning as will conflict with those principles, unless the words of the statute warrant the belief that the Legislature intended to substitute a new rule and overthrow the old one.

The case of Hale *vs.* The New Jersey Steam Navigation Company, (15 *Conn. R.*, 539,) is, in some of its facts and principles, analogous to the one I am considering. It grew out of the loss, by fire, of the steamboat Lexington. The plaintiff having carriages in New York, which he was desirous of transporting to Providence or Boston, the defendants received them, and undertook to convey, and deliver them at those places. The carriages were not delivered, and an action for their loss having been brought in the Courts of Connecticut, it was held that the contract was to be construed according to the laws of the State where it was made. It was claimed by the defendants, that they were not liable, because of the public notice they had given, that they would not be responsible for losses, other than what arose from the fault or negligence of their officers or servants; that by the common law, a common carrier may limit his responsibility, by express contract, or by public notice of such intended limitation.* In pronouncing the

opinion of the Court, Williams, C. J., said: "There is nothing in this case, either from the location of the parties, or the nature of the contract, which shows that they (the parties) could have had any other law in view, than that of the place where it was made. Indeed, as the goods were shipped to be transported to Boston or Providence, there would be the most entire uncertainty what was to be the law of the case, if any other rule was to prevail. We have, therefore, no doubt that the law of New York, as to the duties and obligations of common carriers, is to be the law of the case." And notwithstanding the Court determined that by the modern English cases, common carriers could restrict their responsibility by notice to that effect, yet they administered the law of New York, which allows no restrictions, but such as were recognized by the earlier cases in England.

If, in this case, the *lex loci contractus* governed in respect to the liability of common carriers, it applies with increased force to the case before us.

Our answer to the question presented for our advice must be in the negative, and that the demurrer ought to be sustained.

---

*Vide* Mich. Central Railroad *vs.* Ward *post.*